UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A<small>NGELA</small> T<small>ORO</small>,

        Plaintiff,

v.

H<small>ARTFORD</small> L<small>IFE AND</small> A<small>CCIDENT</small>
I<small>NSURANCE</small> C<small>OMPANY</small>,

        Defendant.

                                /

Case No. 16-12951

S<small>ENIOR</small> U.S. D<small>ISTRICT</small> J<small>UDGE</small>
A<small>RTHUR</small> J. T<small>ARNOW</small>

U.S. M<small>AGISTRATE</small> J<small>UDGE</small>
M<small>ONA</small> K. M<small>AJZOUB</small>

**O<small>RDER</small> D<small>ENYING</small> P<small>LAINTIFF'S</small> C<small>ROSS</small> M<small>OTION TO</small> R<small>EVERSE</small> D<small>EFENDANT'S</small>
ERISA D<small>ETERMINATION AND</small> M<small>OTION FOR</small> S<small>UMMARY</small> J<small>UDGMENT</small> [19] <small>AND</small>
G<small>RANTING</small> D<small>EFENDANT'S</small> M<small>OTION FOR</small> J<small>UDGMENT ON THE</small> A<small>DMINISTRATIVE</small>
R<small>ECORD</small> [20]**

Plaintiff Angela Toro is 45-years old and suffers from degenerative cervical disc disease, lumbar spondyloses, and rheumatoid arthritis. She challenges the decision by Defendant Hartford Life and Accident Insurance Company to deny her claim for Long Term Disability ("LTD") benefits issued under an ERISA-governed employee benefit plan ("the Plan") to her employer, ZF North America, Inc. Plaintiff's claim falls under 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).

For the reasons stated below, Plaintiff's Cross Motion to Reverse Defendant's ERISA Determination and Motion for Summary Judgment [19] is

**DENIED**. Defendant's Motion for Judgment on the Administrative Record [20] is **GRANTED**.

## FACTUAL BACKGROUND

45-year old Angela Toro worked as a machinist from August 2011 to October 2012 at ZF Lemforder. Through her employment, she participated in the Plan, which was sponsored and administered by ZF Group North America, Inc. Defendant Hartford Life and Accident Insurance Company is the Plan's insurer.

Plaintiff has a long history of neck and back ailments. She had an MRI of her thoracic spine and an MRI of her lumbar spine in January 2010. HA 685-86. Plaintiff had a second MRI of her lumbar spine in September 2012. HA 345-48. She stopped working on October 23, 2012 because she needed a procedure to alleviate her back pain. HA 694. Dr. Salwa Mohamedahmed,[1] Plaintiff's treating physician, indicated that Plaintiff was excused from work from October 29, 2012 to January 2, 2013. HA 681. Plaintiff applied for and received Short Term Disability ("STD") Benefits from approximately October 30, 2012 through April 22, 2013. HA 166.

On December 26, 2012, Dr. Mohamedahmed extended Plaintiff's leave to April 29, 2013. HA 679. On April 23, 2013, Dr. Rudram Muppuri extended

---

[1] Plaintiff refers to Dr. Mohamedahmed in both her Motion and her Response Brief as a male. Defendant claims that Plaintiff is mistaken. In his Review, Dr. Chandler refers to Dr. Mohamedahmed as a female.

Plaintiff's leave time again, to May 22, 2013, due to uncontrolled chronic lower back pain. HA 678. Plaintiff had another MRI of her thoracic spine on April 25, 2013 and an MRI of her lumbar spine in August 2014. HA 339-40, 343-44, 393-94.

## I. The Terms of the Insurance Policy

ZF Group North America, Inc. sponsored and administered the Insurance Policy at issue for the benefit of its employees. The Policy provides disability benefits if a participant becomes disabled while insured under the policy, remains disabled during and after the elimination period, and submits proof of loss. HA 725. To receive coverage, an individual's disability must result from accidental bodily injury, sickness, mental illness, substance abuse, or pregnancy. HA 734. An individual is considered disabled under the Policy if she is prevented from performing one or more of the essential duties of:

1) Your occupation during the elimination period;
2) Your occupation for the 24 month(s) following the elimination period, and as a result your current monthly earnings are less than 80% of your indexed pre-disability earnings; and
3) After that, any occupation.

HA 734.

"Your occupation" refers to "your occupation as it is recognized in the general workplace," rather than "the specific job you are performing for a specific employer or at a specific location." HA 737. "Any occupation" means:

> Any occupation for which you are qualified by education, training or experience, and that has an earnings potential greater than the lesser of:
> 1) The product of your Indexed Pre-Disability Earnings and the Benefit Percentage; or
> 2) The maximum monthly benefit.

HA 733.

An "Essential Duty" is one that "is substantial, not incidental; is fundamental or inherent to the occupation; and cannot be reasonably omitted or changed." HA 734. A participant's ability to work the number of hours in a regularly scheduled work week qualifies as an Essential Duty. HA 734. Benefit payments will stop when the participant is no longer disabled. HA 726.

## II. Plaintiff's claim for Long Term Disability Benefits

In July 2013, Defendant informed Plaintiff that her STD benefits were set to expire. If Plaintiff wished to continue receiving benefits, she would have to apply for Long Term Disability ("LTD") Benefits and provide Defendant with updated medical information supporting her disability. HA 166. Toro applied for LTD Benefits on July 7, 2013 and Defendant approved her claim under a "Your Occupation" standard on July 22, 2013. HA 562-65, HA 160. The total of Toro's Gross Monthly LTD Benefits was $1,404. HA 165.

On October 31, 2014, Defendant asked Plaintiff via letter to submit information and documentation supporting her continued need for LTD Benefits. HA 130-31. The letter indicated that after receiving LTD Benefits for 24 months

under the Policy's "Your Occupation" Disability/Disabled standard, Plaintiff would have to qualify as disabled under the Policy's "Any Occupation" standard to continue receiving benefits. HA 130. Plaintiff's LTD Benefits began April 23, 2013; accordingly, she would have to qualify under the "Any Occupation" standard beginning on April 23, 2015. HA 131. Dr. Mohamedahmed provided medical records to Defendant between November 2014 and March 2015. HA 104-06, 108-13, 117-18, 121-26. One of the records from April 1, 2014 indicates that Plaintiff told Dr. Mohamedahmed that she exercises regularly. HA 519.

In the January 20, 2015 Attending Physician's Statement of Continued Functionality, Dr. Mohamedahmed confirmed diagnoses of lumbar spondylosis, facet arthropathy, chronic pain syndrome, and degenerative disc disease. HA 202. She noted that Plaintiff suffered from neck pain, thoracic and lumbar back pain, tenderness in her thoracic spine, and numbness. HA 202. She found that Plaintiff could:

- Walk for 10 minutes at one time and for one hour total per day;
- Stand for 15 minutes at one time and for 2 hours total per day;
- Sit for 30 minutes at one time and for 3 hours total per day;
- Not bend, kneel, crouch, drive, or lift any amount over one pound;
- Occasionally reach above the shoulder with her right arm, but never with her left arm;
- Occasionally reach below her shoulder with her left arm, but never with her right arm; and
- Frequently finger/handle with her right hand and occasionally with her left hand.

HA 203.

Notwithstanding Defendant's repeated requests for additional information regarding Plaintiff's capabilities, medical condition, and restrictions, Dr. Mohamedahmed failed to explain the medical rationale to support the above-listed restrictions. HA 212-14. The doctor also confirmed on May 5, 2015 that Plaintiff was occasionally able to lift/carry up to five pounds. HA 212.

To determine Plaintiff's employability, Defendant commissioned an Employability Analysis Report on May 8, 2015. HA 240. The results of the Report were generated by cross-referencing Plaintiff's functional capabilities, education, and work history with nearly 13,000 occupations as classified by the U.S. Department of Labor, using the Occupational Access System ("OASYS") job matching system. The OASYS search, adjusted to match Plaintiff's functional capabilities per her doctor's opinions, returned two occupations that best suited Plaintiff's training and experience. HA 241. Although one occupation was eliminated, the other, surveillance-system monitor, qualified as a viable employment match that fit Plaintiff's needs. A surveillance-system monitor is an entry-level position that requires no extensive training, no prior experience, "and can be performed with short term on the job training." HA 242. It is not a physically demanding position and the functions of the job fit Plaintiff's abilities and limitations. Plaintiff would earn approximately $1,563.29 per month, which

exceeds the "Any Occupation" definition's $1,459.29 monthly requirement. HA 242, 245.

After a review of the available administrative record, Defendant determined that Toro was not prevented from performing the essential duties of any occupation. Accordingly, she no longer qualified as Disabled under an "Any Occupation" standard, and LTD Benefits were no longer payable. HA 89. In making its determination, Defendant gave particular consideration to the following documents:

- Dr. Mohamedahmed's January 2015 Attending Physician's Statement;
- Dr. Mohamedahmed's May 2015 explanation of Plaintiff's restrictions;
- Dr. Mohamedahmed's office notes from August 2014 through January 2015;
- Plaintiff's January 2015 Work and Educational History form; and
- The May 2015 Employability Analysis Report.

### III. The appeal process and independent physician review

Plaintiff, through counsel, appealed Defendant's denial of LTD benefits on November 17, 2015. HA 236. Plaintiff's counsel provided to Defendant an August 18, 2015 MRI study that noted a disc protrusion at L4-5 with degenerative discs at T11-12 and T12-L1. HA 237-38. Plaintiff also gave to Defendant medical records that post-dated the original denial and records Defendant had already reviewed. HA 84-85, 204, 216.

Defendant engaged Professional Disability Associates ("PDA") to facilitate an independent physician review of Plaintiff's case. Dr. Leon Chandler, who is board-certified in physical medicine and rehabilitation, provided the independent review. HA 85. Dr. Chandler spoke with Dr. Mohamedahmed and analyzed Plaintiff's available medical records. MRIs of Plaintiff's lumbar and thoracic spine from 2012 and 2013 indicated that most of Plaintiff's vertebrae and spinal segments were intact and showed no significant abnormalities, with only some "mild facet degenerative changes" and "mild disc bulging." HA 339-45. Dr. Chandler noted that Dr. Mohamedahmed "has consistently documented Ms. Toro to have a normal gait, posture, normal strength in upper and lower limbs and tenderness to palpitation of the spine." HA 85. He also highlighted the fact that in April 2014, Plaintiff self-reported leading an active lifestyle and exercising regularly. HA 187, 519. On June 8, 2014, Plaintiff "was documented to be independent with activities of daily living and having no limitations on mobility." HA 187. Lastly, despite Plaintiff's absence from work since October 2012, Dr. Chandler found no documented range of motion, strength, sensory, or balance deficits. HA 187. Dr. Chandler opined that it was not credible that a 43-year-old woman "who is documented to have full age appropriate strength would not have the capability of lifting/carrying/pushing/pulling 10 lbs. at least occasionally or a negligible amount of weight frequently." HA 188.

In December 2015, Defendant commissioned a second Employability Analysis Report following Dr. Chandler's evaluation. The OASYS search ultimately identified two occupations suited to Plaintiff's needs; surveillance-system monitor and lens inserter. HA 177. Both are unskilled, entry level positions that require no protracted training or prior experience. "These occupations also use worker traits and habits that Ms. Toro possesses and were acquired in her work experiences." HA 177.

Defendant affirmed its denial of Plaintiff's LTD Benefits on December 15, 2015. It determined that Plaintiff was not disabled from performing any occupation as defined in the Insurance Policy. Plaintiff filed her Complaint [1] on August 12, 2016.

### LEGAL STANDARD

The parties agree that because the benefit plan at issue here does not confer discretionary authority upon the administrator, the Court should conduct a *de novo* review of Defendant's denial of Plaintiff's benefits. *Mellian v. Hartford Life and Accident Insurance Company*, 161 F.Supp. 3d 545, 555 (E.D. Mich. 2016). Therefore, the Court's review is confined to the administrative record. The Court must "determine whether the plan administrator made 'a correct decision' without according the administrator any deference or presumption of correctness." *Lipker*

*v. AK Steel Corp.*, 698 F.3d 923, 928 (6th Cir. 2012) (quoting *Shelby County Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 367-68 (6th Cir. 2009)).

ANALYSIS

In her Motion to Reverse and for Summary Judgment, Plaintiff argues that Defendant failed to conduct an independent medical evaluation and erroneously relied on the opinions of Dr. Chandler. Plaintiff also claims that there are questions regarding Dr. Chandler's motivation for finding Plaintiff capable of performing any occupation.

**I.    Defendant properly evaluated Plaintiff's medical records in denying her application for LTD benefits.**

The Insurance Policy at issue is clear: after receiving LTD benefits under the "Your Occupation" standard for 24 months, Plaintiff had to qualify as disabled under the "Any Occupation" standard to continue receiving benefits. The "Any Occupation" standard obligates the plan administrator "to make a reasonable inquiry into the types of skills [a claimant] possesses and [determine] whether those skills may be used at another job that can pay her the same salary range as [her pre-disability earnings]." *McDonald v. Western-Southern Life Insurance Co.*, 347 F.3d 161, 172 (6th Cir. 2003). "Just as a plan administrator must make some inquiry into the nature and transferability of a claimant's job skills, a plan administrator must make some inquiry into whether the jobs selected are ones that the claimant can reasonably perform in light of specific disabilities." *Brooking v.*

*Hartford Life and Accident Ins. Co.*, 167 F. App'x 544, 549 (6th Cir. 2006). However, the plan administrator has no obligation to conduct "a full-blown vocational evaluation" on the claimant's behalf. *McDonald*, 347 F.3d at 172.

Defendant does not contest that Plaintiff has suffered from back pain and that she is functionally limited in certain respects. Contrary to Plaintiff's arguments, however, the record shows that Defendant conducted a meaningful review of Plaintiff's medical history and that its denial of benefits was "the result of a deliberate, principled reasoning process." *DeLisle v. Sun Life Assur. Co. of Canada*, 558 F.3d 440, 444 (6th Cir. 2009). Defendant examined Plaintiff's Work & Education History Form, the Attending Physician Statement of Continued Disability completed by Dr. Salwa Mohamedahmed, Plaintiff's medical records, and Dr. Mohamedahmed's office notes from as far back as June 2013. In the Attending Physician's Statement, Dr. Mohamedahmed notes Plaintiff's thoracic and lumbar back pain, spinal tenderness, and neck pain, and indicates Plaintiff's various functional restrictions. Defendant used Dr. Mohamedahmed's Attending Physician Statement, Plaintiff's LTD benefits application, and Plaintiff's & Education History Form to generate the May 2015 Employability Analysis Report. The OASYS search – which was also based on the information provided by

Plaintiff and her treating doctor – yielded one occupation that satisfied Plaintiff's limitations.[2]

In her Motion to Reverse Defendant's ERISA determination and her Response to Defendant's Motion for Judgment on the Administrative Record, Plaintiff does not provide specific arguments as to why Defendant's initial denial of her benefits was erroneous. She provides a laundry list of the pain she suffered and the various treatments and procedures she has undergone, but does not explain, for example, how she is unqualified for the positions identified by the OASYS search or how she is functionally limited from performing those jobs. In fact, she addresses neither the accuracy of the Employability Analysis Report nor the OASYS search. Plaintiff's conclusory allegations are insufficient for the Court to reverse Defendant's benefits determination.

## II. On appeal, Defendant considered the opinions of the reviewing physician and Plaintiff's treating physician.

Plaintiff's central argument concerns the weight given to the opinions of her treating doctor and Dr. Chandler. She claims that Defendant gave special deference to Dr. Chandler and did not meaningfully consider the opinions of Dr. Mohamedahmed.

---

[2] The initial OASYS search, which occurred in May 2015 before the denial of LTD benefits, ultimately yielded one occupation, surveillance-system monitor, as a viable employment match that fit Plaintiff's needs. The second OASYS search, which occurred in December 2015 after Plaintiff appealed the denial of LTD benefits, yielded two occupations that Plaintiff could perform (surveillance-system monitor and lens inserter).

With respect to the weight given to the opinions of different doctors, the Supreme Court has stated:

> Courts have no warrant to require administrators automatically to accord special weight to the opinions of the plaintiff's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 834 (2003).

Similarly, the Sixth Circuit has held that there is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination." *Calvert v. Firstar Fin. Inc.*, 409 F.3d 286, 296 (6th Cir. 2005). Although the plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician," *Nord*, 538 U.S. at 834, it also "need not defer to the opinions of treating physicians." *Fant v. Hartford Life and Acc. Ins. Co.*, No. 09-12468, 2010 WL 3324974, at *8 (E.D. Mich. Aug. 20, 2010) (internal citation omitted).

In forming his opinion, Dr. Chandler analyzed, among other things, diagnostic imaging reports from September 20, 2012 through August 8, 2015; communication between Plaintiff and Defendant; clinical notes from Dr. Mohamedahmed from April 1, 2014 through November 3, 2015; and clinical notes from Doctors Rudram Muppuri and Shushovan Chakrabortty from March 8, 2013 through December 4, 2014. He also spoke with Dr. Mohamedahmed for approximately 30 minutes, during which she frequently referred to her notes. Dr.

Mohamedahmed told Dr. Chandler that Plaintiff was osteoporotic and had sporadic pain; Plaintiff could sit for one hour at a time; and Plaintiff seemed fine when she walked into the clinic, sat comfortably, and did not use an assistive device. HA 186.

It is Plaintiff's position that Dr. Chandler's conversation with Dr. Mohamedahmed should be considered suspect because Defendant did not pay Dr. Mohamedahmed for her opinions and because the conversation was not recorded. Plaintiff provides no support for this assertion, nor does she point to specific parts of the record that she feels are untruthful or inaccurate. Dr. Mohamedahmed explained Plaintiff's diagnoses and her treatment regimen and was able to discuss with Dr. Chandler the degree to which impairment was likely. There is simply no support in the record to suggest that Dr. Mohamedahmed was incompetent to discuss Plaintiff or her condition.

Defendant commissioned a second Employability Analysis Report in December 2015, relying on Dr. Chandler's analysis, Plaintiff's application for LTD benefits, and Plaintiff's Work & Education History Form. The OASYS search indicated that given her limitations, Plaintiff could work as a surveillance-system monitor and a lens inserter. Dr. Chandler found – again, based on the restrictions imposed by Dr. Mohamedahmed – that these occupations were "flexible and allow for a combination of sitting and standing and walking." HA 177.

It is very clear that Defendant properly evaluated Plaintiff's claim – both in its initial review and on appeal – and its decision that Plaintiff is not prevented from working in *any* occupation is supported by substantial evidence in the record. "Hartford fulfilled its obligation to inquire into [Plaintiff's] skill set, and the transferability of those skills, and to assess her functional capabilities to perform the jobs that it identified." *Fant*, 2010 WL 3324974 at *10.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Plaintiff's Cross Motion to Reverse Defendant's ERISA Determination and Motion for Summary Judgment [19] is **DENIED**. Defendant's Motion for Judgment on the Administrative Record [20] is **GRANTED**.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: August 21, 2017    Senior United States District Judge